Green, J.
delivered the opinion of the court.
In this case, various questions of law are insisted on as grounds for reversing the decree of the circuit court.
1. The first objection insisted on by defendant’s counsel is, that the petition and answer were not read to the jury as forming the issues to be tried, but the matters submitted were drawn up on a distinct piece of paper. We perceive no error in this. The matter in issue by the pleadings, is the adultery of the defendant with the negro Polly, and with other women unknown. This identical enquiry is the one winch was submitted to the jury, and to try which they were sworn. Whether it was read to them from the bill and answer, or from a distinct piece of paper, can make no difference.
2. The next objection is, that the deposition of G. G. Ridley was improperly admitted as evidence. Notice was given to take this deposition, and .the day fixed was a few days after the commencement of the term, at which the order which had been previously made for taking depositions, expired. If an order were necessary to authorise the taking of depositions in such a case, there was no authority for taking this deposition. The record says it was taken after the order had expired. Jt was taken then without any authority derivable from said order, and must be considered as though there had been no order. But divorce cases are in the nature of chancery suits, and the proceedings in them are according to the course of the practice in chancery, except *345 where a difference is made by statute. The parties therefore have a right to take depositions as in chancery suits, without an order of court for that purpose. In this case the defendant was duly notified of the time and place where the deposition would be taken, and the justice of the peace who took it, certifies that it was taken in pursuance of a commission to him directed for that purpose. We are of opinion that there was no error in the court below in permitting it to be read.
3. The next exception is to the introduction of certain witnesses to sustain the credit of Andrew Hamilton, who had been examined as a witness by complainant, on the ground that the character of said Hamilton had not been attacked by the defendant. The record shows that Hamilton was subjected to a searching cross examination by defendant’s counsel, in which many questions as to the situation of the buildings, his motives for being in the place where he witnessed the facts to which he deposed, &c., all going strongly to evince that no credit was given to his statements, and tending to make that impression on the jury. A witness may be impeached by proving that he is not worthy of credit, or that the facts to which he deposes are not true, or by cross examination, in which he may be involved in inconsistencies. 3 Starkie, 1753, 7, 8.
In this case, the cross examination was of a character from which the counsel manifestly intended to argue that the witness had sworn falsely. But to put the matter beyond dispute, it is now earnestly argued, notwithstanding the witness has proved a good character, that this very cross examination convicts the witness of a faLehood, and proves that he is unworthy of belief. It seems strange that with this argument upon his lips, counsel should still maintain that the witness was not impeached. There was no error in permitting the plaintiff to prove Hamilton's good character.
4. The next objection is, that the court permitted-the complainant to examine witnesses to prove that Wallace, whose deposition had been read, was unworthy of belief. The deposition of Wallace had been taken by the complainant, but was not read on her behalf, but her counsel refused to read it, whereupon the defendant’s counsel read the deposition to the *346 iury as evidence for him. Complainant then introduced sev- * 7 1 witnesses and offered to prove that Wallace was unworthy of credit. To proof impeaching this witness on the part of tpe plaintiff, the defendant objected, alleging that he was the complainant’s own witness, and that she could not lawfully impeach him; but the court overruled the objection and permitted the witnesses to be examined.
We think Wallace cannot be -regarded as the complainant’s witness. She was not bound to use the evidence after the deposition was taken. She did not, by introducing him before the jury, stand pledged that he was worthy of credit. We do not perceive that the case differs in principle from the case of a witness, who may be summoned and sworn in a cause but not examined by the party summoning him. If such witness be afterwards examined by the other party, he makes him his own witness, and subjects him to all the rules of evidence applicable'to such relation.
5. It is insisted there was error in permitting the plaintiff to prove by T. B. Davidson, that the witness Wallace had said that the defendant had co-habited with his negro, Wallace not being a’sked or having denied in his testimony thathehad made such statement. This statement of Davidson was illegal. It is not competent to prove what a witness may have said in conversation, although it may contradict his evidence, unless he deny upon oath that he bad made the statements sought to be proved. 3 Starkie, 1753, 5. Had this evidence been objected to in the court below, it would have been error to have permitted it to go to the jury. But the record states that the plaintiff asked leave to introduce proof against the general character of B. R. Wallace, to which the defendant objected, because “he was notthe plaintiff’s witness although she had declined to use his testimony, and the defendant had used it.” This is all the objectiou which was made in relation to the attack of this witness. Afterwards the record shows the plaintiff examined several witnesses as to the general character of Wallace, and then introduced and examined Davidson, as above stated. To this examination no objection was made.
In the case of Ewell vs. The State, 6 Yer. Rep. 364, it is decided, that if incompetent evidence be permitted tp go to *347 the jury without objection, it is too late to except after ver-diet. In that case, the defendant was indicted for incest, acts of incest not within the issue were proved; yet the court said that as no objection was made to the evidence at the time of the reception of it, it did not form ground of error in this court. In the case of Murell vs. The State, (decided at Jackson but not reported,) the same doctrine is re-asserted. In that case, a letter purporting to have been written by Murell was offered as evidence. It was objected to on the ground that it was irrelevant to the matter in issue, but the court decided that it was relevant, whereupon it was read without further objection. On a writ of error to this court, it was determined that as the objection was distinctly confined to thé question of relevancy, and no objection having been afterwards made for w: nt of proof that Murell had written the letter, that the absence of such proof by reason of which the letter was incompetent, did not form a ground of error in this court. These cases are decisive of the present question. Here, the objection is distinctly placed upon, and confined to the single ground of objection, to any evidence going to impeach Wallace, because he was plaintiff's own witness. As therefore there was no objection made to Davidson’s evidence in the court below, its reception does not constitute a ground of error here.
6. The next objection is to the charge of the court to the jury. The answer of the defendant having been read to the jury, the court charged them that the denial in the answer of the facts charged in the bill, was equivalent to the evidence of one witness proving those facts, and that to outweigh the answer, there must be in support of such opposing witness, corroborating circumstances; but that they were to treat the answer as evidence, and looking at his situation, they were-to estimate the truth of the defendant’s statements in the same manner as they would the testimony of any other witness.
If there is error in this charge, and we think there is, that error is in favor of the appellant. By the act of 1799, c 19, § 2, it is provided, that where the defendant shall appear and answer, and either of the parties shall desire any matter of fact that is affirmed by the one and denied by the other, to be tried *348 by a jury, the same shall be so tried. By the act of 1835, c § 5, the same provision is re-enacted. By this provision, the answer of a defendant to a petition for a divorce, has the effect only of making up an issue between the parties. It operates only as a plea would do. Tn the sixth section of the act of 1835, it is provided, that if a defendant admit the adultery, or other facts charged in the petition, still no decree shall be pronounced until proof be heard of the facts. These provisions show that the technical rules applicable to chancery proceedings, are not to be applied to cases of this kind. But if it were an ordinary equity case, and an issue was sent, out of chancery to be tried by a jury, although the answer would be evidence, yet it would be subject to all the rules applicable to other witnesses, a;id will be looked upon by the jury with all the suspicion that attaches to an interested person. Grisley’s Eq. Ev. 157: Searcy vs. Eaton, MS. decided by this court. As therefore the judge in his charge to the jury only erred in giving the answer of the defendant more weight than it was entitled to have, the defendant cannot ask for a reversal of the decree on that account.
7. The remaining question to be considered is, whether the' verdict of the jury ought to have been set aside as contrary to tn.. ""'idence. This question must be determined upon the same prin..' '1os that are applicable to (rials at Jaw. By the act of assembly, u._ party wishing it is entitled to have the issues tried by a jury. It -'■>( competent therefore for the chancellor to disregard the verdict and decide the cause upon his own conclusions as to the facts. .
If the party has a right to a jury trial, then all the rules established by this court, must apply in their full force. It is unnecessary therefore to go into an examination of the proof in-the cause. It is enough to say that the verdict is not repugnant to the evidence, so far from it, that when the evidence of Hamilton, Mulherrin, Mrs. Bins and Alley, are taken together, and we do not consider either of them as having been successfully impeached, it is very difficult to resist the conclusion to which the jury have arrived.
Without any open rupture, it is manifest from the proof, that a coldness has for a long time existed between these par *349 ties. In this state of things he established his shop in Nashville, several miles from bis residence in the country. He took up his residence at his shop in town, and took the girl Polly, with whom the adultery is charged, to keep house for him. He visited his family but seldom, scarcely once a week. He was in the habit of sitting by the fire with Polly after the laborers in the shop had gone to bed. He often undressed before her and went to bed. Her bed was in a room adjoining that in which he slept. No other person slept either in his room’or in hers. When these facts are considered in con-nexion with the fact that Hamilton saw him setting on her bed in the country and hugging her, that Mrs. Bins saw him undressed in the act of rising from the pallet on which Polly slept, and that Alley saw them near each other in the house in town, he buttoning up his pantaloons, and she brushing dow,R her disordered and rumpled dress, it must be admitted that the jury were warranted in finding that they had committed adultery. Juries and courts must judge of facts as other men oí discernment, exercising a sound and sober judgment on circumstances that are duly proved before them. That a man thus living from his wife, sleeping thus near a woman towards whom he certainly felt no disgust, and in relation to whom he has been found in so many equivocal positions, is still innocent of the charge of adultery, is barely possible. We therefore affirm the decree.
Decree affirmed.